

**ORDERED in the Southern District of Florida on July 01, 2010.**

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:                                                    CASE NO. 08-29076-BKC-AJC
                                                          Chapter 11
ROYAL EUROPEAN MOTORS, INC.,
a Florida Corporation,

                Debtor.
_____/

GARY IAN NESBITT,                                         ADV. NO. 09-2046-BKC-AJC-A

                Plaintiff,
vs.

ROYAL EUROPEAN MOTORS, INC.,
a Florida Corporation,

                Defendant.
_____/

**FINDINGS OF FACT AND**
**CONCLUSIONS OF LAW**

        THIS CAUSE came before the Court for trial on February 25, 2010 upon the complaint

commencing this adversary proceeding.  The trial was limited to the issue of damages, as a default

judgment as to liability had previously been entered against the Defendant.  The Plaintiff testified

and presented evidence on damages.  The Defendant presented no witnesses or other evidence.  The

testimony is summarized as follows.

The Plaintiff, GARY IAN NESBITT, owned an Audi automobile which had a "blown engine".  The automobile was delivered to another mechanic (unrelated to this action) whose shop neighbored the Defendant's business.  The mechanic disassembled the engine to inspect the damage.  However, prior to engaging in the repair of the engine, the neighboring mechanic closed his business.  The neighboring mechanic suggested that the Plaintiff have the automobile delivered to the Defendant for repair.  On July 28, 2009, the Plaintiff had the automobile delivered to the Defendant to obtain a written estimate of the cost of repair.  The automobile was delivered directly from the neighboring mechanic with the engine still disassembled.  The Plaintiff was requested to execute the standard Written Motor Vehicle Repair Estimate and Disclosure Statement in accordance with the Florida Motor Vehicle Repair Act, F.S. 559.901 (the "Disclosure Statement").  The Plaintiff executed the Disclosure Statement and checked the box requiring a written estimate prior to work being done on the automobile.

Approximately two (2) weeks later, an individual claiming to work for the Defendant contacted Plaintiff telephonically and stated that "the car would not be worth fixing".  The Plaintiff requested a written estimate to discuss the decision with his fiancée.  On August 14, 2009, approximately two (2) days after the previously described telephone conversation, having still not delivered the written estimate, the Defendant contacted Plaintiff and asked for a decision regarding the repair of the automobile.  The Defendant was advised that Plaintiff still had not received a written estimate as requested, and was not going to have Defendant repair the automobile. The Plaintiff also advised the Defendant that arrangements would be made for the pick up of the automobile.

On August 18, 2009, the Plaintiff hired a tow truck service to pick up the automobile and

deliver it to another mechanic shop.  Upon arrival of the tow truck for the pick up of the automobile, the tow truck driver was advised that the automobile would not be released, so the tow truck driver left.  The tow truck driver advised the Plaintiff of the situation, whereupon Plaintiff contacted the Defendant.  The Defendant advised the Plaintiff that they were placing a lien on the automobile.  Plaintiff reminded Defendant that the Disclosure Statement had been signed and that no written estimate was ever provided nor any authorization to do work given as required by the Florida Motor Vehicle Repair Act, and demanded the immediate release of the automobile.  The Defendant, through one of its agents, apparently caused a lien to be placed upon the automobile and advised the Plaintiff that she would "take less money" if Plaintiff was willing to pay her immediately.  The Plaintiff advised the Defendant that she had no right to any monies.

On or about August 19, 2009, Plaintiff delivered to Defendant a written demand for return of the automobile.  Delivery of the demand letter was confirmed, but the Defendant did not respond to the demand.  The Plaintiff then delivered a second written demand on Defendant on August 24, 2009.  Again, no response was made by Defendant to the Plaintiff.

During the course of the next month, Plaintiff, through another attorney, attempted to obtain the release of the automobile, but was unsuccessful.  Subsequently, after approximately one month, the Plaintiff received from the Defendant's agent a Notice of Claim of Lien and Proposed Sale of Motor Vehicle to Satisfy Possessory Lien per Florida Statute Sec. 713.585 (the "Lien").  As of that time, no estimate had ever been given to Plaintiff, Plaintiff had not authorized any work, and no invoice was ever delivered to Plaintiff.  The Lien did not give any information describing any work done on the automobile; it simply stated that the sum of $2,654.60 had to be paid or the automobile would be sold at public auction on October 6, 2009.  Upon receipt thereof, Plaintiff, utilizing his own law firm to defray fees, delivered to Defendant another letter demanding release of the automobile.

As no response was received by Plaintiff from Defendant or Defendant's agent, on October 5, 2009, Plaintiff filed the instant action for return of the automobile and for damages. In addition, on October 5, 2009, simultaneous with the filing of the action, and based upon the threat of the impending sale of the automobile, the Plaintiff also filed Plaintiff's Emergency Motion for Temporary Injunction Stopping Sale Proceedings Pursuant to Lien. The Court immediately held an emergency hearing and entered its order granting the Plaintiff's Emergency Motion (DE 4) and ordered that *"the Property shall not be sold, transferred, removed, disposed of or encumbered in any way without i) further order of the Court or ii) upon written agreement of both of the parties (DE 8)."* The Court reserved ruling on the award of attorney's fees and costs in connection with the Emergency Motion.

The Defendant did not respond to the Adversary Complaint, and on November 25, 2009, the Clerk of Court entered a Default against the Defendant (DE 12).

Notwithstanding the entry of default against the Defendant, and in direct violation of the Court's prior Order, the Defendant, on December 12, 2009, filed documentation with the State of Florida Department of Motor Vehicles transferring the title ownership of the automobile from the Plaintiff and into the Defendant's name. As of the date of the Final Hearing, the automobile continued to be detained by the Defendant and the title and ownership to the automobile remained in the name of the Defendant in violation of the order of this Court and in detriment to Plaintiff's right to the automobile. The Plaintiff testified that the transfer of title of the automobile has damaged Plaintiff's credit standing.

From the un-refuted testimony and evidence, the Court makes the following Findings of Fact:

1.     The Plaintiff delivered his automobile to the Defendant to consider repair to the automobile.

2.      The Plaintiff executed and delivered to the Defendant the Written Motor

Vehicle Repair Estimate and Disclosure Statement in accordance with the Florida Motor

Vehicle Repair Act, Florida Statutes Chapter 559 (the "Act").

3.      The Defendant failed to provide the Plaintiff with a written estimate for

the repair in accordance with the Act.

4.      The Plaintiff made a formal demand to Defendant for return of the

automobile.

5.      The Defendant refused to release the automobile to the Plaintiff.

6.      The Defendant's wrongful actions necessitated Plaintiff's filing of the

Adversary Complaint.

7.      The Defendant continued to detain the automobile throughout the course of the

proceedings and even after the entry of a default against the Defendant.

8.      The Defendant intentionally and willfully caused the automobile title to be

transferred to Defendant, thus taking an ownership interest in the automobile despite the Court's

previous entry of an order prohibiting such action.

9.      The Defendant deprived the Plaintiff of the use and possession of the automobile and

appears to have illegally converted and taken ownership of the automobile from the Plaintiff.

According to the un-refuted and uncontested testimony and evidence provided to the Court, the value

of the automobile taken from the Plaintiff by Defendant is $4,200.00.  No other value was provided

to the Court.

10.     According to the un-refuted and uncontested testimony provided to the Court, the

value of the loss of use of the automobile to the Plaintiff directly resulting from Defendant's

wrongful detention of the possession and use of the automobile is $2,590.00, based upon the per diem amount established at the Final Hearing in the amount of $12.95 per day.

11.    The filing fee in connection with the Adversary Complaint is $250.00.

12.    According to the un-refuted and uncontested testimony provided to the Court, the tow truck fee incurred by the Plaintiff as a result of the Defendant's actions is $195.00.

13.    According to the un-refuted and uncontested testimony provided to the Court, the costs to the Plaintiff in connection with the notices and demands upon Defendant via certified mail and Federal Express are $36.00.

14.    The Plaintiff testified to the Court and presented to the Court affidavits as to the attorney's fees incurred in prosecuting the case.

## CONCLUSIONS OF LAW

The Defendant, an automobile repair shop, wrongfully retained Plaintiff's vehicle for approximately seven (7) months. The Plaintiff filed an Adversary Complaint for damages and injunctive relief. The Court previously granted the Plaintiff's Emergency Motion for Temporary Injunction Stopping Sale Proceedings Pursuant to Lien and further ordered that the automobile which is the subject matter of this litigation shall not be sold, transferred, removed, disposed of or encumbered in any way without i) further order of the Court or ii) upon written agreement of both of the parties. The Defendant defaulted in the instant cause, and, consequently, at the Final Hearing the Court considered damages only.

Chapter 559, Part VII, Florida Statutes commonly known as The Florida Motor Vehicle Repair Act (the "Act") governs the instant action.    Section 559.921 provides the remedies for violation of the Act.  Subsection 1 of Section 559.921 states that "any customer injured by a violation of this part may bring an action in the appropriate court for relief.  The prevailing party in

that action may be entitled to damages, plus court costs, and reasonable attorney's fees.  The

customer may also bring an action for injunctive relief in the circuit court."  See also, *Osteen v.*

*Morris,* 481 So.2d 1287 (Fla. 5th DCA 1986).  "Whomever injures him (the Plaintiff) in the exercise

of that right renders himself liable for consequent damage".  *Meakin v. Dreier*, 209 So.2d 252 (Fla.

2nd DCA 1968).  The Court in *Meakin* held, "The value of an article to its owner lies in his right to

use, enjoy, and dispose of [the article].  There are the rights of property which ownership vests in

him, and whether he, in fact, avails himself of his right or use does not in the least affect the value

of his use."  The Court on appeal affirmed the trial court's findings, awarding compensatory damages

to the Plaintiff customer based upon loss of use.  The Court held that the Plaintiff customer

"introduced evidence of a loss of use for a substantial period of time", adding that, "the total period

of time involved is more than 'nominal'.  A loss of two weeks use of a car driven 800 miles in the

three previous weeks plaintiff owned it is substantial."  The uncontested testimony established per

diem damages for loss of use of the vehicle at $12.95 per day.  *See also Lucas Truck Service*

*Company v. Hargrove*, 443 So.2d 260 (Fla. 1st DCA 1983) ("[t]he proper measure of damages in this

case is an award for Hargrove's (Plaintiff's) loss of use of the truck for period of thirteen days during

which Lucas (Defendant) refused to return the truck.").

    Accordingly, the Court finds that the Plaintiff was wrongfully deprived of the use of the

automobile for 210 days through the date of the Final Hearing and is entitled to damages.  Thus, it

is

    ORDERED AND ADJUDGED that Plaintiff is entitled to a judgment for damages as

follows:

    1.    For loss of use of the wrongfully detained vehicle in the sum of <u>$2,719.50</u>.

    2.    For wrongfully transferring the vehicle to the Defendant, in violation of this Court's

express order NOT to do so, the Court imposes a sanction in the sum of $7,200.00, which amount

includes the value of the vehicle as established by testimony ($4,200) and an additional sanction for

violating an Order of the Court.

3.      For the filing fee in the amount of $250.00.

4.      For the towing truck fees of $195.00 which were expended by Plaintiff to obtain

return of the vehicle.

5.      For the cost of $36.00 for mailing and delivery of documents which was incurred by

the Plaintiff in connection with this matter.

6.      Pursuant to Section 559.921 (1) of the Florida Statutes, Plaintiff is entitled to an

award of reasonable attorney's fees in the total amount of $12,000, representing fees for the filing

of the Complaint and other documents in this case, for attendance at court hearings, including the

Final Hearing/Trial in this adversary proceeding, and for the submission of post-hearing

memorandum.  (Plaintiff advised the Court that he did deliver a civil theft letter to the Defendant,

but confirmed he was not pursuing treble damages pursuant to civil theft in this case, and such

damages are not considered herein.)

###

Submitted By:

GARY IAN NESBITT
DAVID M. LAZARUS
Attorneys for Creditor Plaintiff
18901 Northeast 29th Avenue, Suite 100
Aventura, Florida 33180
Tel: 305-933-2000

Copies Furnished To:

[Gary Nesbitt is directed to serve a conformed copy of this Order upon all parties in interest
immediately upon receipt of same and shall file a certificate with the Clerk of Court.]